IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RENEE D. GUSTAFSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 11-cv-5852 |
| v. | ) | |
| | ) | Hon. John Z. Lee |
| MYRON K. THOMAS, in his official capacity; | ) | |
| and WILLIAM ADKINS, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant William Adkins[1] moves for summary judgment asserting qualified immunity from Plaintiff Renee D. Gustafson's claims that he violated her constitutional rights when he installed covert video surveillance equipment in an office where Plaintiff and other female employees changed clothing. Defendant attests that he had no knowledge of the use of the office as a changing room, that this use of the office was not common knowledge at the workplace, and that therefore he committed no constitutional violation. Defendant also argues that the law was not clearly established with respect to searches and seizures in public sector workplaces. Plaintiff attests the opposite, i.e., that Defendant knew the office was used as a changing room, that this use was common knowledge in the workplace, and that the law regarding searches and seizures in the public sector workplace was clearly established.

For the reasons provided herein, the Court finds that disputed issues of material fact exist and that the applicable law was clearly established at the time of the alleged violation. Defendant's motion is denied.

---

[1] The other defendant in this case is Chief of the Police and Security Service Myron K. Thomas. Defendant Thomas has neither independently moved for summary judgment on qualified immunity nor moved to join Defendant Adkins' motion.

1

## I. Factual Background

Plaintiff Renee D. Gustafson worked in the Police and Security Service at the Jesse Brown Veterans Affairs Medical Center in Chicago. *See* Def's. Rule 56.1(b)(3) Stat. Mat. Facts ("Def.'s Mat. Facts") ¶ 1. Gustafson brings this lawsuit under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), alleging that Defendants William Adkins and Myron K. Thomas violated her constitutional rights. Specifically, Gustafson alleges Defendants' installation of covert video surveillance equipment in the old supervisors' office (the "office") at the Medical Center, where female officers changed their clothes, violated her Fourth Amendment rights. According to Gustafson, Defendants installed the covert security camera in the office without authorization and with full knowledge that female officers used the office as a changing room, and thereafter Defendants used a digital recording device to capture images of her and other officers undressing. *See* Am. Compl. ¶¶ 16–24. The Court previously denied Defendants' motion to dismiss the case. *See* Aug. 17, 2013 Ord. (denying motion arguing that the Civil Service Reform Act of 1978, 5 U.S.C. § 2301 *et seq.* and the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* barred Plaintiff's *Bivens* claims).

The parties submitted their respective Local Rule 56.1(b)(3) factual statements, and several basic facts are undisputed. Adkins worked as a Detective with the Police and Security Service at the Medical Center. Def.'s Mat. Facts ¶ 3. Thomas formerly served as Chief of the Police and Security Service and supervised Adkins. *Id.* ¶ 2. Gustafson and Adkins agree that, during the time of the events relevant to this case, the office was used actively as a supervisors' office; all supervisors in the Police and Security Service, whether male or female, used the office, and all had keys to the office. *Id.* ¶ 6. Gustafson further offers that, from 2007 through September 2009, only four supervisors, two female and two male, possessed keys to the door

lock and made use of the office. *See* Pl.'s Resp. Def.'s Mat. Facts. ¶ 6. Adkins does not dispute this fact. The parties also appear to agree that Adkins installed the covert video surveillance equipment in May 2007.

Beyond these basic facts, Gustafson and Adkins disagree about the circumstances surrounding the use of the office as a changing room by female officers and, importantly, Adkins' knowledge concerning that use. Adkins avers he lacked awareness that anyone used the office to change clothes, and until asked a question about this in September 2009 during a Veteran's Affairs Investigation of the underlying incident, he had never heard of such a practice. Def.'s Mat. Facts ¶ 7. Relatedly, Adkins attests that, during the time period pertaining to the allegations, male and female Police and Security Service personnel had their own conveniently located locker rooms. Def.'s Mat. Facts ¶ 8.

Gustafson disagrees. She offers four additional facts contesting Adkins' state of knowledge and the clothes-changing arrangements at the Medical Center. First, Gustafson attests that, during the time period relevant to the lawsuit and prior to 2007, there was no female locker room for Police and Security Service personnel to don and doff their uniforms before and after shifts, and therefore it was common knowledge that female personnel used the office to change. *See* Pl.'s Resp. Def.'s Mat. Facts ¶¶ 7, 9. Second, Gustafson claims that Adkins and Chief Thomas[2] observed Gustafson and coworker Lt. Barbara Judge enter the office wearing street clothes and exit in uniform, and vice versa; consequently, she contends that both Defendants must have known female personnel used the office for changing clothes. *Id.* ¶¶ 7,

---

[2] Defendant objects to Plaintiff's initial reference to a "Chief Watkins" and argues that, because there is no such person, Plaintiff's version of the facts must be disregarded by the Court. *See* Def.'s Reply 9. Plaintiff has submitted a Corrected Declaration/Affidavit correcting the name of "Chief Watkins" to "Chief Thomas." *See* Pl.'s Correct. Decl. and Aff. ¶ 3; *see also id.* n.1 (noting typographical errors). The Court accepts Plaintiff's revision of her typographical error and construes the earlier reference to "Chief Watkins" to be a reference to "Chief Thomas."

10. Third, Gustafson attests that, during the relevant time period, both she and Lt. Barbara Jude used the office because there was no female locker room at the Medical Center. *Id.* ¶¶ 7, 11. Lastly, Gustafson points out that, during the Veteran Affairs' internal investigation of the covert video surveillance, Assistant Chief Cherrylynn Seals became extremely upset at the possibility of such surveillance in the office because Seals herself had used the office to change clothes. *Id.* ¶¶ 7, 12; *see also id.*, Ex. C., Sept. 14, 2009 Veterans Affairs Mem. GUST706.

In summary, Gustafson and Adkins agree both male and female personnel used the office and had keys to its door during the time period in question. Beyond this, however, Gustafson and Adkins dispute the state of Adkins' knowledge and the circumstances and common understanding at the Medical Center concerning the use of the office by female personnel for changing clothes. With these facts in mind, the Court turns to Adkins' assertion of qualified immunity.

## II. Legal Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). "This involves two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011). "Courts may exercise discretion in deciding which question to address first." *Hernandez v. Sheahan*, 711 F.3d 816, 817 (7th Cir. 2013). "The plaintiff carries the burden of defeating the qualified immunity defense." *Rabin*, 725 F.3d at 632.

## III. Discussion and Analysis

### A. Disputed Issues of Material Fact Preclude Qualified Immunity

Defendant first argues that, because he lacked knowledge that female officers used the office to change clothing, it is impossible for him to have violated Plaintiff's Fourth Amendment rights. Here the fatal flaw in Defendant's argument is evidentiary — on summary adjudication of qualified immunity, the Court must construe all evidence in the light most favorable to the Plaintiff. *Hernandez*, 634 F.3d at 914. "If resolution of a claim of qualified immunity depends on disputed issues of material fact, [it must] await a full trial." *Mitchell v. Randolph*, 215 F.3d 753, 755 (7th Cir. 2000). Importantly, the parties have not taken substantial discovery. The Court instead is confronted with a "he-said" "she-said" duel of affidavits which it must view in Plaintiff's favor.

Additionally, Plaintiff offers two independent evidentiary bases to contest Defendant's assertion he lacked knowledge that female officers used the office as a changing room. First, Plaintiff offers her own affidavit based on her personal knowledge and observation, indicating that Defendant saw several female officers, including Plaintiff, enter the office in plain clothes and leave again in uniform. *See* Pl.'s Corrected Decl./Aff. ¶ 3. This casts doubt on Defendant's protestations of ignorance. Second, Plaintiff offers the Veterans Affairs internal investigation report, which references the common knowledge among the staff at the Medical Center that female personnel changed clothes in the office. *See id.* ¶ 5; *see also* Pl.'s Resp. Def.'s Mat. Facts, Ex. C., Sept. 14, 2009 Veterans Affairs Memo. GUST706.

The Court further notes that whether the staff of the Medical Center *generally* knew about the use of the office as a changing room for female employees is difficult to resolve based only upon the two competing affidavits. No further affidavits, declarations, or testimony from

5

staff members have been marshalled by the parties or otherwise exist in the record. In short, viewing the facts in the light most favorable to Plaintiff, the Court finds that genuine disputes exist as to whether Defendant knew that female employees used the office to change clothes and whether such knowledge was shared generally by the other employees.

Defendant's additional evidentiary arguments are unpersuasive. Citing *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013), Defendant first argues that Plaintiff's labeling of his affidavit as "self-serving" does not place the facts contained in the affidavit in dispute. But this is beside the point. Plaintiff offers evidence effectively contradicting Defendant's affidavit, and as noted above, the Court must view any conflict of admissible evidence in Plaintiff's favor.

Citing *Ward v. First Federal Savings Bank*, 173 F.3d 611, 618 (7th Cir. 1999), Defendant also argues that Plaintiff's affidavit does not reveal how she knew that Defendant had observed her entering the office in plain clothes and emerging in uniform. Consequently, Defendant argues that this factual statement must be disregarded. But Plaintiff's affidavit *does* aver the source of her knowledge, namely, that she personally saw Defendant observe herself and Lt. Barbara Judge enter the office in plain clothes and exit in uniform.[3]

It may well be that additional discovery will present the parties and the Court with a more conclusive view of the evidence. At present, however, viewing the affidavits and limited admissible evidence in a light most favorable to Plaintiff, the Court concludes that there is a

---

[3] Defendant cites three additional cases for the proposition that evidence must meet proper foundational requirements to be considered at the summary judgment stage. *See Owens-Floyd v. City of Chic.*, No. 05 C 3182, 2007 WL 4365324, at *1 n.1 (N.D. Ill. Dec. 11, 2007) (citing Fed. R. Evid. 602); *Comcast of IL X, LLC v. Toguchi*, No. 05 C 5363, 2007 WL 1876401, at *3 (N.D. Ill. June 27, 2007) (citing Fed. R. Civ. P. 56(e)); *Miroballi Shoe, Inc. v. Nine West Footwear Corp.*, No. 02 C 1388, 2004 WL 1254135, at *10 (N.D. Ill. June 8, 2004) (noting that the affiant must set forth the grounds, proper or improper, for their conclusions). The Court, however, finds such foundation exists. At minimum, Plaintiff's affidavit attests to specific facts based on her personal knowledge and observation: she saw Defendant observer her. As such, Plaintiff has "has personal knowledge on the subject." *Ward v. First Fed. Sav. Bank*, 173 F.3d 611, 618 (7th Cir. 1999). And while Plaintiff also relies on a Veterans Affairs' internal investigation report, Defendant does not offer specific arguments as to its inadmissibility.

genuine dispute as to Defendant's knowledge that female personnel used the office to change clothing. "Defendants are entitled to immunity before trial (and therefore entitled to appeal immediately the denial of their motion for summary judgment on grounds of immunity) only if, *even if the facts are construed as favorably to the plaintiff as the record permits*, they still are entitled to immunity[.]" *Egebergh v. Nicholson*, 272 F.3d 925, 927 (7th Cir. 2001) (emphasis added). Given the disputed facts here, summary judgment on qualified immunity is inappropriate, and Defendant's motion must be denied.

### B. The Law Was Clearly Established

In contesting whether the law concerning searches and seizures in public workplaces was clearly established when Defendant installed the covert video surveillance equipment, both Plaintiff and Defendant rely on *O'Connor v. Ortega*, 480 U.S. 709 (1987). *O'Connor* concerned a doctor's claim that authorities improperly searched his office at a state hospital and focused on whether the doctor had a reasonable expectation of privacy in his office and what the appropriate Fourth Amendment standard was for searches in public workplaces. *O'Connor*, 480 U.S. at 771–72. Defendant argues that *O'Connor* produced only a plurality opinion and thus did not produce a settled analytical framework for deciding whether a public employer's investigation of workplace-related misconduct intrudes on constitutionally protected privacy interests. Plaintiff, by contrast, argues that *O'Connor* clearly established that a reasonableness inquiry controls the search of public workplaces.[4]

---

[4] Gustafson also argues that because Defendant's conduct allegedly violated Illinois state criminal and civil statutes, the law was clearly established. *See* Pl.'s Mem. Opp. 13. This argument fails. "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984). Such violations serve as the basis for clearly established law "only to the extent that there is a clear violation of the statutory rights *that give rise to the cause of action for damages*." *Id.* at 204 n.12 (emphasis added). Plaintiff's damages claims stem from alleged Fourth Amendment violations and alternative tortious violations of privacy, neither of which depend on the Illinois statutes cited by Plaintiff.

7

As an initial point of analytic organization, both Plaintiff and Defendant rely on cases decided after the alleged installation of the covert video surveillance equipment in May 2007. Plaintiff cites to district court cases from outside the Seventh Circuit: *Carter v. County of Los Angeles*, 770 F. Supp. 2d 1042 (C.D. Cal. 2011); *John Doe v. Dearborn Public Schools*, No. 06–CV–12369-DT, 2008 WL 896066 (E.D. Mich. Mar. 31, 2008); and *Avila v. Valentin-Maldonado*, No. 06-1285(RLA), 2008 WL 747076 (D.P.R. Mar. 19, 2008). Likewise, Defendant relies on dicta from *City of Ontario v. Quon*, 560 U.S. 746 (2010), addressing *O'Connor* and the state of the law in 2010. Because these cases were all decided after May 2007, they cannot have clearly established the law at the time. *See Cygnar v. City of Chic.*, 865 F.2d 827, 846 (7th Cir. 1989) (examining only cases decided before the events at issue in analyzing how clearly established the law was for qualified immunity).

The one case Plaintiff cites decided prior to the video equipment's installation, *Trujillo v. City of Ontario*, 428 F. Supp. 2d 1094 (C.D. Cal. 2006), is a district court case from outside this circuit which rested its holding largely on Ninth Circuit precedent.[5] But "[w]hen looking at closely analogous cases to determine if a right was clearly established at the time of the violation, we look first to controlling precedent on the issue from the Supreme Court and to precedent from this Circuit." *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010).

After separating the wheat from the chaff, the Court agrees with Plaintiff that *O'Connor* clearly established the contours of the constitutional violation in this Circuit. Notwithstanding

---

Whatever the implications of potential violations of Illinois law, these alleged violations have no bearing on whether the law was clearly established for qualified immunity purposes.

5    In particular, *Trujillo* relied on *United States v. Takeda*, 923 F.2d 665, 676 (9th Cir. 1991), which held that a person may have a heightened privacy interest against being videotaped in an office, and *United States v. Nerber*, 222 F.3d 597, 603 (9th Cir. 2000), which held that hidden video surveillance is one of the most intrusive manners of investigative searching, only to be used in limited circumstances. Plaintiff has not pointed to holdings in the Seventh Circuit analogous to *Takeda* and *Nerber*.

8

Defendant's assertion that *O'Connor* represents a "legal-analytical muddle," the Seventh Circuit adopted the *O'Connor* plurality's reasonableness analysis almost a decade before the installation of the covert video surveillance equipment. *See Shields v. Burge*, 874 F.2d 1201, 1203–04 (7th Cir. 1989) (adopting *O'Connor* plurality's reasonableness analysis); *see also United States v. Fernandes*, 272 F.3d 938, 942 (7th Cir. 2001) (noting adoption of *O'Connor* plurality's standard). Cutting through the "muddle," the Seventh Circuit held that "[t]he essential principle that [*O'Connor*] teaches is that an employer's workplace search must be reasonable." *Shields*, 874 F.2d at 1204. As Plaintiff points out, the plurality in *O'Connor* held that determining whether a governmental employer's search or seizure is reasonable depends on two factors: First, whether the search was "justified at its inception," and second, whether the search "as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *O'Connor*, 480 U.S. at 726. The Seventh Circuit adopted this two-pronged analysis prior to the installation of the covert surveillance equipment that occurred in this case. *See Fernandes*, 272 F.3d at 942. ("To be considered legally valid under the plurality's reasoning, a search must be reasonable in both its inception and scope."). This clearly established the contours and requirements of the law concerning a public employer's search of a workplace office at the time the Defendant installed the covert surveillance equipment.

Lastly, the Court addresses Defendant's mistaken insistence that *O'Connor*'s lack of a majority holding more generally means it cannot have produced clearly established law. This argument may have the veneer of sense, but it is legally misplaced. A controlling holding may be gleaned from a plurality opinion. *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members

9

who concurred in the judgments on the narrowest grounds[.]"); *see also Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 722 (7th Cir. 2003) (same). Moreover, the Seventh Circuit performed this very analysis of *O'Connor*, found that there was no distinction between Justice Scalia's concurring opinion and the plurality opinion, and concluded that the plurality opinion controlled.[6] *Shields*, 874 F.2d at 1203. Defendant's contention that a plurality opinion *ipso facto* produces no clearly established law lacks merit; *O'Connor* clearly established the law at the time of the alleged installation of the covert video surveillance equipment.

## IV. Conclusion

For the reasons stated herein, the Court denies Defendant William Adkins motion for qualified immunity [61].

**SO ORDERED**  ENTER: 12/16/14

  **JOHN Z. LEE**
  **United States District Judge**

---

[6] The Seventh Circuit further stated "[e]ven if we believed that Justice Scalia did adopt a less stringent standard than the plurality, we would still follow the plurality's reasonableness test because it is the Court's least-common-denominator holding." *Shields*, 874 F.2d at 1204.